# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FREDDIE MARSALIS (#451967)**                                          **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                                **NO. 12-0799-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 7, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FREDDIE MARSALIS (#451967)**                                **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                **NO. 12-0799-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment (Rec. Doc. 17).  This motion is not opposed.[1]

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.*, against Warden N. Burl Cain, Legal Programs Director Trish Foster, Dpty Warden Darrell Vannoy (referred to in the Complaint as "D. Vannoy"), Classification Officer Williams, Classification Officer Johnny Joshep, Secretary James M. LeBlanc, Lt. E. W. Magee, Lt.Col. David Voorhies, Msgt. Robert Day, Msgt. Oscar Coney, Classification Officer Duncan, Col. J. Smith and Major Trent Barton, complaining that his constitutional rights have been violated by his continued confinement in extended lockdown

---

1.  Pursuant to Order dated August 28, 2013 (Rec. Doc. 25), the Court denied a Motion filed by the plaintiff's which requested an evidentiary hearing and which asserted that the defendants' documentary submissions in support of the instant Motion for Summary Judgment were not sufficient to support the defendants' claim that the plaintiff has failed to exhaust administrative remedies as mandated by 42 U.S.C. § 1997e.  In denying the plaintiff's Motion, the Court advised the plaintiff that the Court was able to address the pending Motion for Summary Judgment without an evidentiary hearing, but would take into account "any opposition and/or evidentiary showing which the plaintiff may provide."  Notwithstanding, the plaintiff has not seen fit to provide any opposition or evidentiary showing in response to the defendants' Motion.

at LSP since April, 2002, which has resulted in the deprivation of benefits available to inmates housed in the general population of the prison, including but not limited to the deprivation of adequate opportunities for exercise, to participate in rehabilitative programs and to enjoy contact visits with family members.  The plaintiff asserts that this long-term segregated confinement constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and has caused him to suffer generalized soreness, headaches, bowel problems and hemorrhoids.  The plaintiff further asserts that this confinement is the result of both unconstitutional policies and favoritism at LSP and that other inmates with similar or worse disciplinary records have been released from extended lockdown whereas he has not.  In addition, the plaintiff complains that although he has filed numerous administrative grievances complaining of this wrongful conduct, defendant Trish Foster has rejected the grievances without investigation or substantive consideration.  The plaintiff also asserts that commencing in November, 2011, defendant E.W. Magee arranged for the issuance of multiple disciplinary reports against the plaintiff in retaliation for the plaintiff having complained to supervisors about alleged wrongful conduct by that defendant.  Finally, pursuant to Amendment to the Complaint (Rec. Doc. 3), the plaintiff has voluntarily dismissed his claims asserted against defendants James LeBlanc, David Voorhies and Classification Officer Duncan and has clarified that his claims are asserted against the remaining defendants in their individual capacities only.  The referenced Amendment also asserts the additional claim that he has been subjected to alleged overcrowding and double-bunking at LSP, which he asserts creates a "potential hazard of violence."[2]

---

2.  An attempt by the United States Marshal's Office to serve defendants Classification Officer Williams and Col. J. Smith has proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of these defendants,

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, certified copies of the plaintiff's pertinent administrative remedy and disciplinary board proceedings, certified copies of the plaintiff's Master Prison Record, Conduct Report and Inmate Location Sheet, certified copies of the plaintiff Lockdown Review Board records from 2002 to 2013, a certified copy of the plaintiff's Initial Classification records, certified copies of LSP Directive No. 18.002 (relative to "Classification"), LSP Directive No. 10.001 (relative to "Lockdown") and LSP Directive No. 10.013 (relative to the "Camp J Management Program"), and the affidavit Rhonda Z. Weldon.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This

---

specifically because the Department needs "first name[s]" to identify them. *See* Rec. Doc.13. Despite notice, the plaintiff has not provided additional information regarding the identities of these defendants. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is justification for dismissal of that defendant from the proceedings if the plaintiff does not show good cause for such failure. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Williams and Smith be dismissed, without prejudice.

burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

In the instant Motion for Summary Judgment, the defendants first assert that the plaintiff has failed to exhaust administrative remedies relative to certain of the claims asserted herein. In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[3] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures

---

3. 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

before filing a lawsuit relative to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th

Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must

be proper, including compliance with an agency's deadlines and other critical procedural rules.

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative

exhaustion requirement is to provide fair notice to prison officials of an inmate's specific

complaints so as to provide "'time and opportunity to address complaints internally.'"  *Johnson

v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525.  Further,

the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this

purpose.  *Id.*

      From a review of the pertinent exhibits, it appears that the plaintiff filed numerous

administrative grievances at LSP which sought to raise the claims asserted in this proceeding

relative to his long-term confinement in extended lockdown, but each of these grievances was

rejected at an initial stage of the proceedings, without investigation or substantive review, either

for the reason that the grievances related to "lockdown or review board decisions" or to

"disciplinary matters" which, in accordance with prison regulations, are not reviewable through

the administrative process.  The defendants assert, therefore, based upon the rejection of the

plaintiff's administrative grievances, that the plaintiff has never successfully exhausted

administrative remedies relative to his claims regarding confinement in extended lockdown and

that these claims are subject to dismissal for this reason.

      The defendants' assertion in this regard is without merit.  Specifically, the federal statute

which mandates exhaustion of administrative remedies specifically states that "[n]o action shall

be brought with respect to prison conditions ... until such administrative remedies *as are

available* are exhausted."  42 U.S.C. § 1997e (Emphasis added).  It is apparent from the explicit

language of the statute, therefore, that an administrative remedy must be "available" in order for an inmate to be required to avail himself of it.  *See, e.g., Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (finding that an inmate was not required to exhaust administrative remedies which were not available to him).  *See also Smith v. Grant*, 214 F.3d 1350 (5th Cir. 2000) (concluding that dismissal for failure to exhaust administrative remedies was improper where, *inter alia*, the inmate had produced documentation suggesting that "administrative remedies [were] not 'available' for the claims which he [sought] to assert").  In the instant case, although the plaintiff attempted to assert, through the filing of numerous administrative grievances, his claims regarding the alleged wrongful confinement in extended lockdown, and although he explicitly stated in those grievances that he was *not* challenging either unreviewable disciplinary board proceedings or periodic classification proceedings, *see*, *e.g.*, Rec. Doc. 17-8 at p. 5 (wherein the plaintiff stated, in connection with one of his grievances, that "this is not a 'disciplinary matter' or a challenge to the 90-day review board"), each of these grievances was rejected without substantive consideration because prison officials determined that the grievances did in fact pertain to disciplinary or review board proceedings.  Accordingly, inasmuch as it is the defendants' burden to establish that the plaintiff has failed to exhaust administrative remedies relative to his claims, *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010), and inasmuch as the defendants have not directed the Court's attention to any other administrative remedies that may have been available to the plaintiff relative to his claims regarding his confinement in extended lockdown, the Court finds that, on the showing made, the plaintiff's claims in this regard are not subject to dismissal for failure to exhaust administrative remedies.

Notwithstanding the foregoing, the Court notes that certain of the plaintiff's claims asserted in this lawsuit were not raised in any of his various administrative grievances and/or

were only alluded to so minimally as to be insufficient to provide fair notice to prison officials of

the plaintiff's specific complaints and provide prison officials with "time and opportunity to

address [the] complaints internally."  *See Johnson v. Johnson*, *supra*, 385 F.3d at 516.

Specifically, a review of the plaintiff's various administrative grievances reflects that the

plaintiff did not assert in any of these grievances the claims (1) that he has been denied an

adequate opportunity for exercise, (2) that there is an alleged unconstitutional policy at LSP

regarding maintaining inmates in extended lockdown, (3) that he was issued any wrongful

disciplinary reports, other than one relative to a search conducted in November, 2011,[4] (4) that

any alleged disciplinary reports were motivated by retaliatory animus, or (5) that he has been

wrongly subjected to double-bunking and overcrowding at LSP.  Accordingly, these claims are

subject to dismissal for failure to exhaust administrative remedies.  Similarly, although the

plaintiff made a single oblique reference in one of his administrative grievances to the

---

4.  The plaintiff did apparently exhaust administrative remedies relative to a single alleged false disciplinary report which he asserts was wrongly issued by defendants E.W. Magee and Oscar Coney on November 15, 2011, pursuant to which he was punished with a transfer to the Camp J Management Program at LSP.  This claim, however, is not one of constitutional dimension.  The law is clear under § 1983 that an allegation by an inmate plaintiff that he has been reported or punished for conduct which he did not commit or of which he is innocent does not, without more, state a claim of denial of due process.  *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984).  Further, the United States Supreme Court has held that ordinary prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment subjects an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate.  *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  In *Sandin*, the Supreme Court concluded that a disciplinary sentence of placement in segregated confinement failed to rise to the level of an atypical and significant deprivation which warrants the requirement of constitutionally mandated procedural protections.  Similarly, the Fifth Circuit has found that a disciplinary sentence of transfer to Camp J at LSP does not result in an atypical and significant deprivation within the context of prison life.  *See Dickerson v. Cain*, 241 Fed. Appx. 193 (5th Cir. 2007); *Fisher v. Wilson*, 74 Fed. Appx. 301 (5th Cir. 2003).  Accordingly, this claim, albeit administratively exhausted, does not rise to the level of a constitutional violation and must be dismissed.

Americans with Disabilities Act, *see* Rec. Doc. 17-8 at p. 4, the substance of that grievance dealt principally with allegations of favoritism at LSP and so did not provide sufficient notice to prison officials regarding any specific violation of the referenced statute.   Finally, there is no mention in any of the plaintiff's administrative grievances of any wrongdoing committed by certain defendants named in this proceeding.   Specifically, the plaintiff makes no mention whatever of defendants Johnny Joshep or Robert Day in his grievances and makes only a single reference to defendant Trent Barton, who was merely an alleged recipient of the plaintiff's "grieviances [sic] and letters."   *See* Rec. Doc. 17-6 at p. 9.   Accordingly, in the absence of adequate notice provided to prison officials that the plaintiff intended to assert specific substantive claims of alleged wrongdoing by these defendants, the Court finds that the plaintiff has failed to exhaust administrative remedies as to them and that they are entitled to summary judgment as a matter of law.

Turning to a substantive review of the plaintiff's remaining claims and defendants, which claims relate to the plaintiff's long-term segregated confinement at LSP, the moving defendants assert that they are entitled to qualified immunity in connection with these claims.   Specifically, the defendants assert that the plaintiff will be unable to establish that the defendants have participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.   *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).   As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.   *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established.

*Id.*  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  *Id.*  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  *Id.* at 202.  The assertion of the qualified immunity defense alters the summary judgment burden of proof.  *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[5]

Undertaking the qualified immunity analysis, the Court concludes that the defendants' Motion for Summary Judgment should be granted.  Specifically, the evidence adduced by the defendants reflects that in 2002, the plaintiff was serving a ten-year sentence for armed robbery and was subsequently indicted and pled guilty, in 2003, to two counts of first degree murder.  Upon transfer to the custody of the Louisiana Department of Public Safety and Corrections, he was evaluated for an appropriate initial custody classification and was classified as a maximum security inmate.  Among the concerns expressed by prison officials in arriving at this classification were the plaintiff's youth, the seriousness of the charges levied against him, the length of his sentences of confinement, and his bad conduct while in custody, including a

---

5.  The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Although the *Saucier* methodology will be "often beneficial," the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.  *Id.*

criminal charge of battery upon a correctional officer while so confined.  Accordingly, upon

transfer to LSP, he was assigned to segregated confinement as a result of this initial

classification.  In accordance with prison regulations, the plaintiff was thereafter evaluated by

LSP review boards on a regular basis for a possible release from segregated confinement, but the

review boards made the determination on each such occasion that the plaintiff should be

maintained at the initial custody classification.  The record further reflects, and the plaintiff

concedes, that over the course of the intervening years, he has been charged with numerous

disciplinary infractions, and it is apparent that his disciplinary record has been a factor in the

decision to maintain him in segregated confinement.  Included in these disciplinary infractions

have been charges for the possession of weapons at LSP in 2004 and 2011, respectively.  *See*

Rec. Docs. 17-4 at p. 4 and 17-9 at p. 9.  In addition, after being found guilty of certain

disciplinary infractions, the plaintiff has been sentenced to the Camp J Management Program at

LSP, which is a 3-tiered punitive extended lockdown classification, pursuant to which inmates

are denied certain privileges until their behavior improves to the point that prison officials

conclude that the inmates may be released from the Camp J Program and may be reclassified to a

less punitive extended lockdown assignment or to the working cellblocks or the general prison

population.

    First, to the extent that the plaintiff asserts a claim regarding his initial classification as a

maximum security inmate in 2002 or 2003, this claim is not one of constitutional dimension.  In

this regard, it is generally recognized that courts "are not concerned with a prisoner's initial

classification level based on his criminal history before his incarceration because an inmate has

'no protectable liberty interest in his classification.'" *See Jones v. Roach*, 196 Fed.Appx. 287,

288 (5th Cir. 2006), *citing Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir. 2003).  *See also*

*Jimenez v. McQueen*, 460 Fed. Appx. 458 (5ᵗʰ Cir. 2012) (finding no due process violation where an inmate was classified to administrative segregated confinement and maintained at that custody classification for a "number of years"); *Hernandez v. Velasquez*, 522 F.3d 556 (5ᵗʰ Cir. 2008) (finding no due process violation where an inmate was maintained in administrative segregated confinement for more than a year). *Cf., Wilkinson v. Austin*, 545 U.S. 209, 223-24 (finding that inmates had a protected liberty interest which required due process protections before being classified to Ohio's "supermax prison," which classification included extreme isolation, onerous conditions, an automatic disqualification from parole consideration, and only annual reviews of their custody status); *Tate v. Sparks*, 2013 WL 5914398 (N. D. Miss. Nov. 4, 2013) (concluding that the rule announced in *Wilkinson, supra*, was not applicable to maximum security confinement in Mississippi because the conditions in Mississippi were not as severe as those in Ohio, including *inter alia* – as in Louisiana – more frequent custody reviews, more opportunity for communication with other inmates, and no automatic disqualification from parole consideration). Accordingly, in light of the concerns expressed by prison officials relative to the plaintiff's youth, the seriousness of his offenses, the length of his sentences and his bad custodial conduct, the Court finds no denial of due process in connection with his initial classification to extended lockdown. *See McCord v. Maggio*, 910 F.2d 1248, 1250-51 (5ᵗʰ Cir. 1990) (finding that, inasmuch as the "[c]lassification of prisoners is a matter left to the discretion of prison officials," where the decision to keep an inmate was reasonably related to legitimate security objectives and was not an exaggerated response to security considerations, there was no denial of due process).

Moreover, in the alternative, any claim which the plaintiff may have relative to such initial classification is clearly barred by the one-year limitations period applicable to claims

asserted in Louisiana under § 1983.  In this regard, inasmuch as there is no federal statute of

limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the

forum state's general personal injury limitations period for such claims.  *Owens v. Okure*, 488

U.S. 235, 249-50 (1989).  In Louisiana, the applicable period of limitations is one year.  La. Civ.

Code Art. 3492.  Moreover, under federal law, a cause of action under 42 U.S.C. § 1983 accrues

"when the aggrieved party has either knowledge of the violation or notice of facts which, in the

exercise of due diligence, would have led to actual knowledge thereof."  *Piotrowski v. City of

Houston*, 51 F.3d 512, 516 (5th Cir. 1995), *cert. denied*, 534 U.S. 820 (2001) (citations and

internal quotation marks omitted)  A plaintiff need not realize that a legal cause of action exists

but must only have knowledge of the facts that support a claim.  *Id.*  Accordingly, inasmuch as

the plaintiff was admittedly in possession of all pertinent information relative to his initial

classification in 2002 or 2003, at such time that he was initially classified to segregated

confinement, his claim relative thereto is prescribed.

   Notwithstanding the foregoing, the Court interprets the plaintiff's allegations as also

asserting a claim that, at some point during the ensuing years, his continued confinement in

extended lockdown rose to the level of an "atypical and significant hardship ... in relation to the

ordinary incidents of prison life," thereby potentially creating a protected liberty interest which

entitled him to due process protections.  *See Sandin v. Connor*, *supra* 515 U.S. at 486-87

(concluding that proceedings which result in an atypical punishment in the context of prison life

may implicate a protected liberty interest).  Assuming *arguendo* that at some point in time the

plaintiff's continued confinement in extended lockdown created a protected liberty interest

which warranted procedural protections, the Court must next determine whether the record

discloses any material disputed fact regarding the procedural protections which the plaintiff was

afforded.  In the prison context, due process is generally satisfied by an informal, non-adversarial evidentiary review by prison officials, pursuant to which an inmate may present his views regarding placement or maintenance in segregated confinement.  *See Hewitt v. Helms*, 459 U.S. 460, 477 (1983).  *See also Wilkinson v. Austin*, *supra,* 545 U.S. at 229 (noting that *Hewitt* remains "instructive for ... discussion of the appropriate level of procedural safeguards").

In the instant case, according to prison regulations, inmates classified to extended lockdown at LSP are interviewed personally at 90-day intervals and evaluated "to determine whether the conditions that originally made it necessary to place [them] in lockdown have ceased to exist."  *See* Rec. Doc. 17-19 at pp. 4-5.  In addition, inmates classified to the Camp J Management Program at LSP are evaluated even more often, at 30-day intervals.  *See* Rec. Doc. 18-18 at p. 4.  The plaintiff in this case does not assert or suggest – and has not produced any evidentiary submission – that he was denied these periodic reviews of his custody status.[6]  Nor has he alleged that the review process is faulty *per se* or that it lacks any particular procedure required by due process.  Rather, his claim appears to be more of an attack upon the mere correctness of the decisions made by prison officials to maintain him in extended lockdown, not on the process by which the various review boards determined to do so.  On this showing, the Court finds that the plaintiff has not shown that he was denied due process in connection with his maintenance in extended lockdown at LSP.  *See Woods v. Edwards*, 51 F.3d 577, 582-83 (5th Cir.

---

6.  In contrast, the defendants have produced lockdown review board records reflecting that the plaintiff's custody status was routinely evaluated.  *See* Rec. Docs. 17-11 through 17-14.  And to the extent that that there may have been episodic failures in the obligation to conduct timely periodic reviews, such failures would amount to the mere failure to follow prison regulations which is not actionable under § 1983.  *See Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989).  *See also Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights").

1995) (upholding the dismissal of an inmate's claim regarding maintenance in punitive segregated confinement at LSP for more than four (4) years and finding that, in providing the inmate with periodic reviews of his custody status, prison officials had provided all the process that the inmate was due).

The plaintiff's allegations may also be interpreted as complaining of the deprivations to which he has been subjected while classified to segregated confinement at LSP.  This claim is also without merit.  Although it is recognized that an inmate has a constitutional right under the Eighth Amendment to be free from exposure to cruel and unusual conditions of confinement, the Eighth Amendment "does not mandate comfortable prisons".  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Rather, the Eighth Amendment imposes upon prison officials only minimal requirements in the treatment and facilities which they provide to prisoners.  *Id.* at 363 n. 10. While prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, a constitutional violation occurs only when two requirements are met.  First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need."  *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, 501 U.S. 294, 304 (1991).  Second, under a subjective standard, the Court looks to whether the prison officials allegedly responsible for the deprivation have been "'deliberately indifferent' to inmate health or safety".  *Id., citing Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Specifically, the officials must have been aware of facts from which an inference could be drawn that a substantial risk of serious harm existed to the inmate, and they must also have drawn the inference.  *Farmer v. Brennan, supra*, 511 U.S. at 837.  While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so

alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter, supra*, 501 U.S. at 305. The deliberate indifference standard is appropriately applied to the plaintiff's allegations regarding the conditions of his confinement. *Id.* at 303; *Woods v. Edwards*, *supra*, 51 F.3d at 581.

In the instant case, there is no indication that the plaintiff has been deprived of any basic human need. The most that he has alleged is that, while classified to extended lockdown, he has been denied certain privileges and benefits which are available to inmates housed in the general population or other areas of the prison. Specifically, "[i]nmates in general population enjoy[] the privileges of having contact visitations(s), attending school, attendin[g] church, ... attending ... gatherings, ... gospel concerts, ... can play sports, have holliday [sic] parties, attend the annual Angola Rodeo ... make up to $5,000.00 dollars from hobby craft sales, ... join clubs and eat lavish food while watching movies, ... watch television daily, order clothes and name brand shoes, ... have CD players, join a choir, gain trusty status, attend funerals of love[d] ones, ... [and] earn wages, earn trades, etc." Rec. Doc. 1-1 at p. 5. In addition, inmates in general population "are issued sweat shirts yearly for the winter ... and receive all form of care packages donated from outside organizations." Rec. Doc. 3 at p. 3. These deprivations, however, alone or in combination, have not deprived the plaintiff of the "minimal civilized measure of life's necessities" or of any specific "basic human need." Under these circumstances, therefore, the Court concludes that this claim does not rise to the level of a constitutional violation.

The plaintiff also complains that other inmates classified to maximum security extended lockdown at LSP have been released to the general population while he has not, and that this

"favoritism" has amounted to a violation of his constitutional rights.  This claim may be seen to implicate the plaintiff's constitutional right to equal protection.  In this regard, the Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons similarly situated be treated alike.  *See Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).  In order to successfully plead an equal protection claim, however, an inmate plaintiff must allege and show that he is a member of a specific group and that prison officials have acted with a discriminatory purpose because of such membership.  A discriminatory purpose "implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).  An inmate cannot base an equal protection claim solely on a personal belief that he has been a victim of discrimination.  *Woods v. Edwards, supra*, 51 F.3d at 580.  Specifically, vague and conclusory allegations are insufficient to state an equal protection claim.  *See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990).  In the instant case, all that the plaintiff has alleged is that other inmates assigned to maximum security extended lockdown at LSP have been released from lockdown whereas he has continued to be classified thereto.  This assertion is insufficient to state a claim that he and the referenced co-inmates are sufficiently "similarly situated," that prison officials have intentionally singled out the plaintiff as a member of a particular group for disparate treatment, or that the plaintiff is even a member of any particular protected group.  Accordingly, this claim does not rise to the level of a constitutional violation and must be dismissed.

Finally, although the plaintiff has named as defendants herein Warden Burl Cain, Legal Programs Director Trish Foster and Dpty Warden Darrell Vannoy, he has failed to allege any direct personal participation by these defendants in the violations alleged.  Specifically, the

plaintiff has failed to allege that these defendants either participated originally in classifying the plaintiff to extended lockdown in 2002 or 2003 or have thereafter participated in any periodic review boards which have evaluated the propriety of releasing the plaintiff from such confinement.  All that the plaintiff alleges relative to these defendants is that he has repeatedly attempted to contact them through correspondence and administrative grievances and that the defendants have not responded to these advances and have, instead, neglected their duties by failing to visit the extended lockdown cellblocks.  In addition, the plaintiff complains that these defendants have improperly rejected his administrative grievances and complaints without investigation or substantive consideration.

Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).  Any allegation that the defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a

breach by the supervisor of an affirmative duty specially imposed by state law.  *Lozano v. Smith*,

*supra*, 718 F.2d at 768.

Applying the foregoing standard, the Court finds that the plaintiff has failed to state a

cause of action against defendants Cain, Foster and Vannoy.  Although he complains of the

defendants' rejection of his administrative grievances and of their failure to investigate or take

remedial action in response thereto, the law is clear that an inmate is not constitutionally entitled

to any investigation into his administrative claims or to a favorable response thereto.

Specifically, there is no procedural due process right inherent in such a claim.  As stated by the

United States Court of Appeals for the Fifth Circuit in *Geiger v. Jowers*, 404 F.3d 371, 373-74

(5th Cir. 2005):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process
> rights resulting from the prison grievance procedures, the district court did not err in
> dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected
> liberty interest in having these grievances resolved to his satisfaction.  As he relies on a
> legally nonexistent interest, any alleged due process violation arising from the alleged
> failure to investigate his grievances is indisputably meritless.

(Emphasis in original).  Accordingly, the plaintiff's claims against defendants Cain, Foster and

Vannoy of an alleged failure to properly respond, investigate or take appropriate action in

response to his letters and administrative grievances is without legal foundation and must be

rejected.

Finally, in the context of a Motion for Summary Judgment, it is well-settled that a

plaintiff may not rest upon mere allegations or assertions contained in his Complaint in opposing

a properly supported motion.  *Celotex Corp. v. Catrett, supra*, 477 U.S. at 324.  Specifically,

Rule 56 requires that, in response to a properly supported motion, the nonmoving party must "go

beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'"  *Id.*  When a party does not file an opposition to a motion for summary

judgment, the Court is permitted to consider the facts in support of the motion as undisputed and

to grant summary judgment if the facts show that the movants are entitled to judgment in their

favor.  *See Jegart v. Roman Catholic Church Diocese of Houma - Thibodaux*, 384 Fed. Appx.

398, *2 (5th Cir. 2010).  Stated another way, in order to meet his burden of proof, the party

opposing a motion for summary judgment "may not sit on its hands, complacently relying" on

the pleadings.  *Weyant v. Acceptance Insurance Co.*, 917 F.2d 209, 212 (5th Cir. 1990).  In the

instant case, despite notice and an opportunity to appear, the plaintiff has not come forward with

any opposition to the defendants' Motion for Summary Judgment or to the documentary

evidence produced in support thereof.  Other than the mere allegations of the plaintiff's

Complaint, unsupported by corroborating evidence, there is nothing before the Court which

tends to support his claims.  What is before the Court for consideration is competent evidence

adduced by the defendants, supported by documentation, which reflects that the plaintiff has not

been deprived of due process in connection with his confinement in extended lockdown at LSP.

Accordingly, based upon the foregoing and upon the plaintiff's failure in this case to oppose the

defendants' Motion for Summary Judgment, failure to designate specific evidence in the record

of sufficient caliber and quantity to create a genuine issue for trial, and failure to produce

supporting evidence on his own behalf, the Court concludes that the defendants' Motion is well-

taken and that, on the record before the Court, the defendants are entitled to summary judgment

as a matter of law.

   The plaintiff also seeks to invoke the supplemental jurisdiction of this Court in

connection with claims arising under state law, *i.e.,* claims of negligence, malfeasance, and

neglect of duty.  A district court, however, may decline the exercise of supplemental jurisdiction

if the plaintiff's state law claims raise novel or complex issues of state law, if the claims

substantially predominate over the claims over which the district court has original jurisdiction,

if the district court has dismissed all claims over which it had original jurisdiction, or for other

compelling reasons.  28 U.S.C. § 1367.  In the instant case, considering the allegations of the

plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's federal

claims be dismissed, the Court recommends that the exercise of supplemental jurisdiction be

declined.

<u>RECOMMENDATION</u>

It is recommended that the plaintiff's claims asserted against defendants Classification

Officer Williams and Col. J. Smith be dismissed, without prejudice, for failure of the plaintiff to

serve these defendants within 120 days as mandated by Fed. R. Civ. P. 4(m).  It is further

recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's

state law claims and that the defendants' Motion for Summary Judgment (Rec. Doc. 17) be

granted, dismissing the plaintiff's claims asserted against the remaining defendants, in part for

failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e, and in part as being

without substantive merit, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 7, 2014.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**